IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COLLIE GEORGE DOWNER,

                Petitioner,

        vs.

MATTHEW CATE,[1] Secretary, California
Department of Corrections and
Rehabilitation,

              Respondent.

No. 2:09-cv-03041-JKS

MEMORANDUM DECISION

Petitioner Collie George Downer, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254.  Downer is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the La Palma Correctional Center, Elroy, Arizona.  Respondent has answered, and Downer has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In March 2004 Downer was convicted by a jury in the San Francisco Superior Court of three counts (1-3) of forcible sexual penetration with a foreign object (Cal. Penal Code § 289(a)(1)), three counts (4-6) of forcible oral copulation (Cal. Penal Code § 288a(c)), two counts (7-8) of forcible rape (Cal. Penal Code § 261(a)(2)), and two counts (9-10) of unlawful sexual intercourse with a minor (Cal. Penal Code § 261.5(c)).  The trial court sentenced Downer to a total of forty years in state prison, consisting of the upper term of eight years on Count 7,

---

[1] Matthew Cate, Secretary, California Department of Corrections and Rehabilitation, is substituted for Matthew C. Kramer, Warden, Folsom State Prison.  Fed. R. Civ. P. 25(d).

plus consecutive upper terms of eight years each on Counts 1, 2, 6, and 8.  Downer timely appealed his conviction and sentence to the California Court of Appeal, First District, which affirmed his conviction and sentence in an unpublished decision.[2]  The Supreme Court granted *certiorari*, vacated the judgment, and remanded the case to the California Court of Appeal for further consideration in light of *Cunningham v. California*, 549 U.S. 270 (2007).[3]  On remand, in an unpublished decision, the California Court of Appeal reaffirmed Downer's conviction but vacated Downer's sentence and remanded the case to the trial court for re-sentencing.[4]  Prior to the time he was re-sentenced by the trial court, Downer filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254 in this Court, which was dismissed as premature without prejudice.[5]  On re-sentencing, the trial court reimposed the same sentence as it initially imposed.  On appeal, the California Court of Appeal affirmed Downer's conviction and sentence in an unpublished decision on May 12, 2009,[6] and the California Supreme Court denied review on July 22, 2009. While his appeal was pending, Downer filed a petition for habeas corpus relief in the San Francisco County Superior Court, which was denied in a reasoned, unreported decision on October 21, 2008.  The California Court of Appeal denied his subsequent petition to that court on November 20, 2008, on procedural grounds:  "[t]he court will not consider repeated applications for habeas corpus presenting claims previously rejected by the court," citing *In re Clark* (1993) 5

---

[2] *People v. Downer*, 2005 WL 2856892 (Cal. App. Oct. 31, 2005) ("*Downer I*").

[3] *Downer v. California*, 549 U.S. 1192 (2007) (Mem.).

[4] *People v. Downer*, 2007 WL 3349745 (Cal. App. Nov. 13, 2007) ("*Downer II*").

[5] *Downer v. Cramer*, 2008 WL 2128049 (E.D. Cal. May 20, 2008).

[6] *People v. Downer*, 2009 WL 1303207 (Cal. App. May 12, 2009) ("*Downer III*").

Cal. 4th 750, 767.[7]  The California Supreme Court summarily denied his petition without opinion or citation to authority on February 18, 2009.[8]  Downer timely filed his Petition in this Court on May 26, 2009.

The facts underlying Downer's conviction and sentence are well known to the parties and are extensively set forth in detail in *Downer I*.  Therefore, except to the extent necessary to understand this decision, this Court will not repeat those facts.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Downer raises six grounds:  (1) the trial court's preclusion of cross-examination of the victim constituted a denial of his Sixth Amendment right to confrontation; (2) newly discovered evidence establishes actual judicial bias by the trial judge; (3) the trial court's preclusion of cross-examination of the victim regarding her prior psychiatric history and the introduction of related evidence constituted a denial of his right to confrontation under the Sixth Amendment; (4) prosecutorial misconduct by eliciting, failing to correct, and arguing false testimony; (5) the trial court failed to conduct an *in camera* review of the potentially exculpatory psychiatric history of the victim; and (6) the imposition of an upper-term sentence violated *Blakely-Apprendi*.[9]  Respondent does not assert any affirmative defense.[10]

---

[7] Docket 1-1, p. 90.

[8] Downer filed earlier petitions for habeas relief in the California courts.  As they are not germane to the issues before this Court, they have not been specifically listed.

[9] *Blakely v. Washington*, 542 U.S. 296 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[10] *See* Rules—Section 2254 Cases, Rule 5(b).

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[11]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[12]  The holding must also be intended to be binding

upon the states; that is, the decision must be based upon constitutional grounds, not on the

supervisory power of the Supreme Court over federal courts.[13]  Thus, where holdings of the

Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[14]  When a claim falls

under the "unreasonable application" prong, a state court's application of Supreme Court

precedent must be objectively unreasonable, not just incorrect or erroneous.[15]  The Supreme

---

[11] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[12] *Williams*, 529 U.S. at 412.

[13] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[14] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[15] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations
(continued...)

4

Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[16]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[17]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[18]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[19]

In applying this standard, this Court reviews the last reasoned decision by the state court.[20]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[21]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new

---

[15](...continued) omitted).

[16] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[17] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[18] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[19] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[20] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[21] *Ylst*, 501 U.S. at 802-03.

original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[22]  This is considered as the functional equivalent of the appeal process.[23]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[24]  This presumption applies to state trial courts and appellate courts alike.[25]

## IV.  DISCUSSION

### A.      Evidentiary Hearing and Related Requests

In his Petition, Downer has requested appointment of counsel and an evidentiary hearing. Related to the evidentiary hearing, Downer has requested sufficient funds to secure investigation and expert assistance, authority to issue subpoenas, and the right to conduct discovery.  Downer's request for appointment of counsel was previously denied.[26]

Downer misunderstands the function of a federal court in a habeas proceeding. Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[27]  The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.]  § 2254(d)(1) is limited to the record that was before the state

---

[22] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[23] *Id.* at 222.

[24] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[25] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[26] Docket No. 28.

[27] *Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

court that adjudicated the claim on the merits."[28]  Although under *Pinholster* an evidentiary

hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear

that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2),[29]

which provides:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless
> the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on
>>> collateral review by the Supreme Court, that was previously unavailable;
>>> or
>>> (ii) a factual predicate that could not have been previously
>>> discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear
>> and convincing evidence that but for constitutional error, no reasonable factfinder
>> would have found the applicant guilty of the underlying offense.

Downer's request in this case does not meet that standard.

The appropriate place to develop the facts necessary to support a petition for federal

habeas relief is in the state court.  It does not appear from the record that the state courts

precluded Downer from developing the factual basis for his claim.[30]  Downer has not identified

any factual conflict that would require this Court to hold an evidentiary hearing to resolve.

---

[28] *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1398-99 (2011).

[29] *Id.* at ___, 131 S. Ct. at 1400-01.

[30] *See id.* at ___, 131 S. Ct. at 1417 n.5 (Sotomayor, J., dissenting) (assuming that the
majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop
the facts was the fault of the state court itself).

B.      **Merits**

Grounds 1 and 3:  Sixth Amendment Confrontation Claims

Downer contends that his Sixth Amendment rights to confront witnesses against him was

violated.  Specifically, that the trial court erred in precluding cross-examination of the victim

concerning a prior "unsubstantiated claim" of having been sexually assaulted, her mental health

history (including her psychiatric diagnoses), the prescription medications she was taking, prior

hospitalizations, and excluding related evidence.  In rejecting Downer's arguments, the

California Court of Appeal held:

> The evidentiary rulings at issue were the granting of the prosecution's in
> limine motion under Evidence Code section 352 to exclude evidence of E.W.'s
> mental health history, and the denial of [Downer's] request during E.W.'s
> testimony for permission to introduce such evidence.  E.W.'s mental health
> problems were revealed in statements E.W. and her friend Jody made to the
> police, and statements E.W. made during her sexual assault examination at San
> Francisco General.  According to defense counsel, E.W. told the police: that she
> had been diagnosed with bipolar disorder; that she had been hospitalized at Alta
> Bates and in Utah for psychiatric problems; that, unlike her, most of the girls at
> the Utah facility were being treated for "sexual issues"; and that she wished she
> had taken her medications before leaving for San Francisco on the night in
> question in this case.  Nurse Slaughter's notes on form 925 under the heading
> "Additional information" read:  "[History] of psych hospitalization [times] two.
> Reports being afraid of school.  [History] of suicide/self mutilation."  [Downer's]
> attorney stated that E.W. reported having been sexually assaulted at Alta Bates,
> and he added, "That was memorialized in a police report.  Counsel has indicated
> that that report was not followed up on, at the behest of [E.W.'s] father."  The
> prosecutor stated that Jody told the police that, "'because of [E.W.'s]
> bipolar/OCD stuff,'" she did not initially believe E.W.'s account of having been
> assaulted by [Downer].
>      E.W., Jody, and Slaughter testified about some of these matters in an
> Evidence Code section 402 hearing.  Slaughter said that her notes on E.W.'s
> mental health history were made for medical rather than forensic purposes, and
> that the information did not bear on E.W.'s credibility.  E.W. admitted that she did
> not take her medications before leaving home on the night [Downer] assaulted
> her.  She wished she had taken her medications, not because they made her feel
> different, but because her mother got the misimpression that her failure to do so
> had caused her to leave home.  She might have told the police that she had been

8

diagnosed with bipolar disorder "because that was something that had been thrown out there," but she was a "little unclear" on her exact diagnosis, and "highly doubt[ed] that I said that a doctor had diagnosed me, for sure, as bipolar."

Jody testified that she told the police that E.W. suffered from bipolar disorder, "OCD," and depression, and that E.W. was taking medications and seeing a therapist for those conditions. She told the police that, because of E.W.'s mental health history, she did not initially believe E.W.'s report of having being assaulted. She said that the doubt stemmed from her lack of medical training and exposure to assault victims, rather than any concern with E.W.'s veracity. She said that E.W. was shaking when she recounted the assaults, that she had never seen E.W. shake that way before, and that she had just wanted to be clear with E.W. about what had happened.

Defense counsel argued that E.W.'s bipolar disorder diagnosis was relevant because symptoms of that disorder can include manic episodes involving sexual indiscretions. [Downer] lodged below, for the appellate record, excerpts from the "DSM-IV," the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, covering the subjects of bipolar disorders and manic episodes. This publication lists among the characteristics of manic episodes "imprudent involvement in pleasurable activities such as buying sprees, reckless driving, foolish business investments, and sexual behavior unusual for the person, even though these activities are likely to have painful consequences . . . Unusual sexual behavior may include infidelity or indiscriminate sexual encounters with strangers." As the trial court noted, there is no suggestion that such behavior will be exhibited by everyone with bipolar disorder.

Defense counsel argued that evidence of E.W.'s bipolar disorder was also relevant to explain why she was shaking when she reported the assaults to Jody. Counsel argued that E.W.'s hospitalization in Utah was relevant because she would have feared being sent there, like most of the girls at the facility were, for "sexual issues" if she admitted having consensual sex with [Downer]. Counsel argued that the sexual assault at Alta Bates was relevant because E.W. might have wanted to fabricate another such assault to make her father feel bad about his unwillingness to have charges pressed over the Alta Bates incident.

The court excluded evidence concerning E.W.'s mental health, finding under Evidence Code section 352 that "the prejudicial effect" of the evidence "and the possible confusion of misleading of the jury on collateral issues outweighs any probative value." The court observed with respect to the matters addressed at the Evidence Code section 402 hearing: that the information on the 925 form concerning hospitalizations, suicide, self-mutilation, and fear of school did not bear on E.W.'s credibility; that E.W. said her medications did not "have any effect on her perceived symptomatic responses"; and that Jody did not have the expertise required to gauge whether E.W.'s mental health problems might have affected the veracity of her report of the assaults. As for whether evidence of E.W.'s mental illness could be used to explain her demeanor when she reported

the assaults, the court remarked that the defense would "have to have expert testimony to establish that," that the jury would have the opportunity to assess E.W.'s demeanor when she testified, and that "this just takes us to a place where we're spending an awful lot of time on things that aren't—maybe aren't relevant or necessary to make the points the defense wants to make . . . ."

After E.W. finished her initial direct examination, [Downer] asked the court to reconsider its ruling prohibiting him from inquiring into her mental health.  In addition to renewing previous arguments, the defense submitted that asking E.W. whether she fabricated the charges to avoid trouble at home opened the door to questions about her Utah placement, and the fear she might have had of being returned there if she admitted having consensual sex with [Downer].  The court found the proffered evidence irrelevant for impeachment of E.W., and adhered to its original ruling excluding the evidence.  As a result of these rulings, none of the subjects the defense wanted to explore involving E.W.'s mental health was broached at trial, and the notes on form 925 concerning E.W.'s psychiatric history were redacted before the document was admitted into evidence.

"[T]he mental illness or emotional instability of a witness can be relevant on the issue of credibility, and a witness may be cross-examined on that subject, if such illness affects the witness's ability to perceive, recall or describe the events in question." (*People v. Gurule* (2002) 28 Cal.4th 557, 591-592; see also Evid.Code, § 1103, subd. (a) [evidence of crime victim's character trait is admissible to prove conduct in conformity with the trait].)  However, evidence that is relevant and admissible may be excluded under Evidence Code section 352 if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice or of misleading the jury.  Exclusion of evidence in accordance with Evidence Code section 352 does not violate the defendant's constitutional rights (see, e.g., *People v. Quartermain* (1997) 16 Cal.4th 600, 623), and such rulings are reviewable solely for an abuse of discretion (e .g., *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314-1315).  "[T]he trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice [or] confusion" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125), and we find no abuse of that broad discretion here.

The court could reasonably find that evidence of E.W.'s possible bipolar disorder diagnosis and of her psychiatric hospitalizations had no more than minimal probative value.  None of this evidence bore on E.W.'s ability to perceive, recall, or recount events-the qualities in a witness of which mental illness would generally be most probative.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 608-609 (conc. opn. of Kennard, J.) [observing that a "mental illness that causes hallucinations or delusions is generally more probative of credibility than a condition causing only depression, irritability, impulsivity, or anxiety"].)  That E.W. might possibly have bipolar disorder and that sexual acting out might possibly be one symptom (among many others) of that disorder would have been highly speculative grounds from which to infer that she was sexually aggressive

toward [Downer] as he claimed, particularly in view of the evidence that she was a virgin who had never even held hands with a boy before the night in question.  It was also sheer speculation on [Downer's] part to claim that E.W. might have made up a story about being assaulted by [Downer] in order to hurt her parents or for any other reason; there was no indication that she wanted to press charges over the Alta Bates incident but was prevented by her father from doing so.  As for E.W.'s alleged fear of being recommitted to the facility in Utah for girls with "sexual issues," she was far more likely to have kept the incident with [Downer] a secret, than to have reported it, if she were really concerned with that prospect.  On the other hand, evidence of possible bipolar disorder and its effects would have been very prejudicial to E.W. because it would have painted her falsely as a sexually aggressive person, and evidence of the hospitalizations would have been potentially very misleading to the jury because the reasons for them had nothing to do with her competence or credibility as a witness.

Similar considerations justified exclusion under Evidence Code section 352 of the evidence addressed at the Evidence Code section 402 hearing.  The mental health history notes on form 925 had no probative value, and were potentially very misleading, because they did not bear on E.W.'s veracity.  The court could credit E.W.'s testimony that her regret over failing to take her medications had nothing to do with her behavior on the night in question.  That Jody did not initially believe E.W.'s account of the assaults because of E.W.'s history of mental illness had no probative value in view of Jody's unfamiliarity with mental disorders and sexual assaults.  As for bipolar disorder as a possible explanation of E.W.'s shaking when she reported the assaults to Jody, if E.W. was in fact bipolar, and if that disorder might have caused the shaking as [Downer] suggests, then presumably Jody would have observed such shaking by E.W. at some point in the many years she had known her; however, Jody testified at the Evidence Code section 402 hearing that she had never seen E.W. shake like she did that night.

In sum, there were no persuasive reasons to admit any of the mental health evidence, and very persuasive reasons for excluding it.  [Downer] identifies no precedent supporting his claim that admission of the evidence was required; the cases on which he relies involved victims who had made (*Redmond v. Kingston* (7th Cir.2001) 240 F.3d 590, 591-592), or may have made (*Franklin v. Henry* (9th Cir.1997) 122 F.3d 1270, 1272),[FN3] prior false sexual assault allegations, and there is no evidence of any such previous false report by E.W.  The court's Evidence Code section 352 ruling was not an abuse of discretion.[31]

> [FN3.] *Franklin v. Henry* was disapproved on another point in *Payton v. Woodford* (9th Cir.2003) 346 F.3d 1204, 1217, which in turn was reversed on another ground in *Brown v. Payton* (2005) 544 U.S. 133 [125 S.Ct. 1432, 1442].

---

[31] *Downer I*, 2005 WL 2856892 at *7-*11.

11

It is well settled that a criminal defendant has a constitutional right to present a defense.[32] This right is not, however, unfettered or without limitation.  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."[33] The Supreme Court has also acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[34]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[35]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."[36]  This latitude, however, has limits.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"[37]  This right is abridged by evidentiary rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"[38]  The Constitution clearly "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the

---

[32] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

[33] *United States v. Scheffer,* 523 U.S. 303, 308 (1998); *see Crane,* 476 U.S. at 689-690; *Marshall v. Lonberger,* 459 U.S. 422, 438, n. 6, (1983); *Chambers v. Mississippi,* 410 U.S. 284, 302-303 (1973); *Spencer v. Texas,* 385 U.S. 554, 564 (1967).

[34] *Crane*, 476 U.S. at 689.

[35] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[36] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[37] *Crane,* 476 U.S. at 690 (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)).

[38] *Scheffer,* 523 U.S. at 308 (quoting *Rock v. Arkansas,* 483 U.S. 44, 58, 56 (1987)).

ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[39]   The Supreme Court has repetitively held that the Constitution permits judges "to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"[40]

Federal Rule of Evidence 403, as does its California counterpart, California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[41]  California employs a similar rule.[42]

In this case, the California Court of Appeal, after exhaustively examining the rulings of the trial court and applying the same rule as applied in the federal courts, found that the trial court did not abuse its discretion in excluding the evidence or limiting the cross-examination of the victim.  This Court cannot say that decision was "contrary to, or involved an unreasonable

---

[39] *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citing Fed. R. Evid. 403 as an example).

[40] *Crane,* 476 U.S. at 689-690 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)) (ellipsis and brackets in original); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

[41] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[42] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("[w]e review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[43]  Downer is not entitled to relief under his first and third grounds.

Ground 2:  Judicial Bias

Downer contends that the victim's father sent a letter to the trial judge prior to trial complaining about the length of time the case had been pending and was allegedly seen coming from the judge's chambers prior to the sentencing hearing.[44]  Downer raised this issue in his 2008 petitions for habeas relief in the state courts.  In ruling against him, the San Francisco Superior Court stated:

> [. . . .]  [Downer] asserts that two years after the conviction, he found in his trial file a letter in which the father of the victim in this case wrote to the judge complaining about the length of time the case had been pending.  In addition, [Downer's friend saw a man she believed to be the victim's father exiting the judge's chambers before the start of the sentencing hearing on April 29, 2004.  [Downer] claims the judge never made a record of these communications.  [Downer] believes these circumstances show the judge was biased against him and, for this reason, erroneously excluded evidence about the victim's sexual history, her previous allegations of sexual assault on other occasions and her history of mental illness.
>
> *    *    *    *
>
> A petitioner for habeas corpus "will be expected to demonstrate due diligence in pursuing potential claims.  If a petitioner had reason to suspect that a basis for habeas corpus relief was available, but did nothing to promptly confirm those suspicions, that failure must be justified.  "Before considering the merits of a second or successive petition, a California court will first ask whether the failure to present the claims underlying the new petition in a prior petition has been

---

[43] 28 U.S.C. § 2254(d).

[44] The victim's father in this case is the Clerk of the Court for the U.S. District Court for the Northern District of California.  Originally filed in the Northern District, because of the victim's relationship to the Clerk of the Northern District, venue was transferred to this district in the interest of justice.  Docket No. 17.

adequately explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims." In assessing a petitioner's explanation and justification for the delayed presentation of a claim, the court will consider whether the facts on which the claim is based, even though recently discovered, could have been discovered earlier.

Here, [Downer's] allegations either have already been addressed on habeas corpus, or were not raised when they could have been.

In addition, the fact the letter from the victim's father to the trial judge was present in the trial folder does not support [Downer's] claim that the judge did not make a record of this communication.[45]

Downer attacks rulings made by the judge during the pretrial and trial that Downer contends were erroneous, depriving him of his constitutional rights. As the Supreme Court has stated:

[. . . .] First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.,* 384 U.S. at 583, 86 S.Ct., at 1710. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[46]

It is also noteworthy that, notwithstanding the fact that Downer has attacked these "erroneous prejudicial rulings" on several levels, he has not prevailed in overturning any one of them.

---

[45] Docket No. 1-1, pp. 84-86. Neither of the appellate courts addressed the merits.

[46] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in the original).

Downer's accusations are either based upon facts taken out of context or totally devoid of any factual or legal basis, supported solely by his conclusory statements. There is nothing in the father's letter that can possibly be construed as urging the trial court to do more than expedite bringing the matter to a conclusion. The fact that the father was the clerk of the federal district court headquartered in San Francisco does not, standing alone, provide a basis for finding that a state superior court judge was in any way influenced to rule one way or the other any more than would such a letter from a member of the general public. As for the allegation that the father was seen leaving the judge's chambers, there is no evidence this occurred.[47] Downer's allegations in this case do not come close to establishing judicial bias, let alone bias sufficient to warrant granting him a new trial.[48]

Downer's position is based upon speculation and conjecture, not fact. Based upon the record before it, this Court cannot say that the decision of the San Francisco Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

---

[47] Downer points to two statements made in letters to him from Valerie Rose. A note dated May 13 in which it states: "Got an e-mail from Barbara. She talked to Gayle so we know more about things. He denied that the father had been in the judge's chambers. But what does he know." Docket 1-1, p. 112. In a letter dated July 14, 2004, she stated: "I think you should know what I found out about Elizabeth W's father. It turns out he is not a judge; he is probably not even a lawyer. He is a Chief Clerk and this means that he's the guy who lawyers file their papers with. Supposedly he has no power or influence over judges. So I don't know why Gayle said he is a high 'mucky muck,' but we will investigate that further. [¶] There is still reason for him not to want information about his family to come out and there is still suspicion on our parts about what he was able to say to the lawyers and the judge." Docket No. 1-1, pp. 112-13. These are not only unsworn statements, even if accepted as true, they fall far short of establishing that the father visited the trial judge in chambers.

[48] Downer contends, without further elucidation, that this is "newly discovered evidence" that establishes that he is "factually and legally innocent." Even assuming it is newly discovered, that it supports the conclusory allegation of innocence is as logically inexplicable as it is unexplained.

16

determination of the facts in light of the evidence presented in the State court proceeding."[49]

Downer is not entitled to relief under his second ground.

Ground 4:  Prosecutorial Misconduct

Downer contends that the prosecutor elicited, failed to correct, and argued false testimony from the victim.  Downer contends that the prosecutor elicited false testimony concerning the victim's prior lack of sexual experience.  Downer's argument also focuses on the comments made by the prosecutor during closing, in which he referred to the character of the victim's testimony as being truthful and capable of belief, e.g., by pointing out that she would correct either lawyer if she was asked a question that wasn't quite right.  The prosecutor also referred to the victim, a 16-year old, as being inexperienced and naive.  The prosecutor gave reasons that the jury should accept the victim's testimony and reject Downer's contrary testimony.  The thrust of Downer's argument is that this was improper because he, Downer, was precluded by the trial court's rulings from introducing the evidence referred to above in Downer's first and third grounds that would have shown the victim's testimony as being false.[50]

Although it appears that Downer raised this issue on direct appeal, the California Court of Appeal did not address it in either *Downer I, II,* or *III*.  When there is no reasoned state court decision denying an issue presented to the state "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[51]  Where the presumption applies, this Court must perform an

---

[49] 28 U.S.C. § 2254(d).

[50] This Court also notes that interspersed in his argument on this ground, Downer continually refers to the "erroneous" rulings by the trial judge and the effect of precluding Downer from attacking the victim's credibility, including her inconsistent pretrial statements.

[51] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 784-85 (2011).

independent review of the record to ascertain whether the state court decision was objectively

unreasonable.[52]  In so doing, because it is not clear that it did not so do, the Court presumes that

the state court decision rested on federal grounds,[53] giving the presumed decision the same

deference as a reasoned decision.[54] The scope of this review is for clear error of the state court

ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[55]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[56]

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with

unfairness as to make the resulting conviction a denial of due process.'"[57]

> In determining whether a comment rendered a trial constitutionally unfair, factors
> [the court] may consider are whether the comment misstated the evidence,
> whether the judge admonished the jury to disregard the comment, whether the

---

[52] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[53] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

[54] *Richter*, 562 U.S. at ____, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[55] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[56] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[57] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

comment was invited by defense counsel in its summation, whether defense
counsel had an adequate opportunity to rebut the comment, the prominence of the
comment in the context of the entire trial and the weight of the evidence.[58]

In essence, what is required is that reviewing courts consider the equivalent to evaluating

whether there  was a "reasonable probability" of a different result.[59]

      "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing

use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable

likelihood that the false testimony could have affected the judgment of the jury."[60]  There is no

allegation, let alone any evidence, that the prosecutor in this case knowingly used false or

perjured testimony, the essential elements of prosecutorial misconduct.[61]  Downer highlights

several areas in which the testimony of the victim appears to be inconsistent with, or contradicted

by, statements she made to the investigating officers four years earlier.  According to Downer,

these statements, which were excluded by the trail court's rulings but known by the prosecutor,

clearly show that she was not a sexually inexperienced virgin.  This Court's review of those

statements referred to by Downer, which are not only taken out of context but are inherently

ambiguous in context, indicates they do not support Downer's interpretation.  Inconsistencies or

contradictions in testimony are an insufficient basis for finding that the prosecutor knowingly

introduced false testimony.[62]  Nor does the fact that the prosecution presented a witness who

---

[58] *Hein v. Sullivan*, 601 F.3d 897, 912-13 (9th Cir. 2010); *see Darden*, 477 U.S. at 182.

[59] *See Hein*, 601 F.3d at 914-15.

[60] *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[61] *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926,
959 (9th Cir. 2001).

[62] *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995) (refusing to reverse
where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the
(continued...)

made contradictory statements concerning the details of the incident necessarily lead to the conclusion that the prosecutor knowingly introduced false or perjurious testimony absent evidence that the prosecutor knew which story was false.[63]

The prosecutor's comments in closing, taken in context, do not establish prosecutorial misconduct.  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."[64]  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[65] "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."[66]  "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones."[67]  "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."[68]

Prosecutors are permitted to tell jurors that they are to consider the witness's conduct, demeanor, and believability.[69]  Because it is reasonable to infer where there are two conflicting

---

[62](...continued)
inference from discrepancies").

[63] *See United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989).

[64] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and internal quotation marks omitted).

[65] *Id.*

[66] *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

[67] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[68] *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

[69] *United States v. Gooch*, 506 F.3d 1156, 1160-61 (9th Cir. 2007).

stories that one of the two sides is being untruthful, it is not improper for the prosecutor to argue

why one should be believed and the other disbelieved.[70]

A prosecutor may not, however, vouch for the credibility of a witness.  As the Supreme

Court has explained:

> The prosecutor's vouching for the credibility of witnesses and expressing his
> personal opinion concerning the guilt of the accused pose two dangers: such
> comments can convey the impression that evidence not presented to the jury, but
> known to the prosecutor, supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on the basis of the evidence
> presented to the jury; and the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the Government's judgment
> rather than its own view of the evidence.[71]

A prosecutor's argument that a witness testified truthfully or is entitled to belief, to the extent it

is merely commenting on evidence in the record or the demeanor of the witness while testifying,

does not constitute improper vouching.[72]  In this case, the prosecutor did nothing more than point

to reasons why the jury should believe the victim and not Downer.  The prosecutor did not

"vouch" for the credibility of the victim.

Based upon the record before it, this Court cannot say that the assumed decision of the

California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[73]  Downer is not entitled to relief under his fourth ground.

---

[70] *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

[71] *United States v. Young*, 470 U.S. 1, 18-19 (1985).

[72] *Gooch*, 506 F.3d at 1160-61.

[73] 28 U.S.C. § 2254(d).

Ground 5:  *In Camera* Review

Downer contends that the trial court erred in failing to review *in camera* the psychiatric records and diary of the victim.  As Respondent correctly notes, Downer's contention is factually rebutted by the record.  The record reflects that not only did the trial court review the medical records *in camera*, but so did the California Court of Appeal.[74]  Downer is not entitled to relief under his fifth ground.

Ground 6:  *Blakely-Apprendi*

Downer contends that the imposition of the upper term on all counts of which he was convicted and making all terms fully consecutive was based upon facts not found to be true by the jury.  This, Downer argues, violates the principal of *Blakely* and *Apprendi*.[75]  In rejecting Downer's arguments, the California Court of Appeal held:

> [Downer] appeals again, and claims that the trial court's imposition of the upper terms without a jury trial on the second factor (i.e., that he tried to blame the victim) violated his constitutional rights.  [Downer] acknowledges that the resentencing proceedings conducted by the trial court complied with the holdings in *Black II* and *Sandoval,* to the extent that the upper terms were based on the victim's minor status which was found true by the jury in its verdict on counts 9 and 10.  Rather, his arguments on appeal are directed at establishing that *Black II* and *Sandoval* were wrongly decided, insofar as they hold that the imposition of an upper term is constitutionally permissible so long as *one* legally sufficient aggravating circumstance has been found to exist by the jury.  (*Black II, supra,* 41 Cal.4th at p. 816; *Sandoval, supra,* 41 Cal.4th at p. 839.)  Nevertheless, [Downer] accepts that we are bound by both of these decisions.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[74] *Downer I*, 2005 WL 2856892 at *7.

[75] Inexplicably, despite the fact that he "won" before the Supreme Court in *Downer I* based on *Cunningham*, Downer simply mentions *Cunningham* in passing, but does not argue its applicability in this case.

As we are bound by *Black II* and *Sandoval,* it would serve no purpose for us to analyze the merits of appellant's arguments.[FN3]   *Black II* and *Sandoval* require us to reject [Downer's] contentions.[76]

> [FN3.]   In any event, we note that, by its multiple guilty verdicts, the jury implicitly rejected the defense theory that appellant's sexual offenses were the result of the 16-year-old victim's conduct.

In *Cunningham*, the Supreme Court did not invalidate upper-term sentences imposed as a result of prior convictions found by the court instead of the jury.[77]   Under *Black II*, only one aggravating factor is necessary to set the upper term as the maximum sentence.  This is consistent with the Sixth Amendment requirement embodied in the *Apprendi*-line of cases.[78]   The Sixth Amendment does not preclude the imposition of consecutive sentences based upon the factual findings by a judge rather than a jury.[79]

The decision of the California Court of Appeal was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[80]   Accordingly, Downer is not entitled to relief under his sixth ground.

### V.  CONCLUSION AND ORDER

Downer is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the requests for an evidentiary hearing, funds, discovery, and subpoena powers are **DENIED**.

**IT IS FURTHER ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[76] *Downer III*, 2009 WL 1303207 at *2.

[77] *Cunningham*, 549 U.S. at 288-89.

[78] *See Butler v. Curry*, 528 F.3d 624, 643 (9th Cir. 2008).

[79] *Oregon v. Ice*, 555 U.S. 160, ___, 129 S.Ct. 711, 717-18 (2009).

[80] 28 U.S.C. § 2254(d).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[81]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[82]

The Clerk of the Court is to enter judgment accordingly.

Dated:  July 19, 2011.

_____/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge, District of Alaska
Sitting by Assignment

---

[81] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted).

[82] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

24